UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 1:07-cv-0664-DFH-WGH |
| JAMES HAYDEN, JAMIE HAYDEN, H.G. by her parents and next friends, Thomas Graham and Kristy Graham, and THOMAS GRAHAM and KRISTY GRAHAM, individually, | ) ) ) ) ) ) | |
| Defendants. | ) | |

ENTRY ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Thomas and Kristy Graham filed a lawsuit on behalf of their minor daughter, "H.G.", against James and Jamie Hayden in the Marion Superior Court. The lawsuit seeks damages for injuries that H.G. sustained in August 2006 at a birthday party hosted by James and Jamie Hayden at the lake property of James' deceased brother, Stephen Hayden.  H.G. was injured when James Hayden was driving a personal watercraft and towing her on an inner tube, and she collided with the dock.  Plaintiff American Family Mutual Insurance Company had sold a liability insurance policy to Stephen Hayden to cover the lake property.  American Family then filed this declaratory judgment action against the Haydens and Grahams seeking a declaration that it need not defend or indemnify the Haydens for claims arising out of the accident, arguing, among other things, that the

policy's exclusion for liability resulting from use of powered watercraft bars coverage.

American Family has moved for summary judgment.  Defendants answered and filed a counterclaim seeking attorney fees, punitive damages, and a declaration that the policy covers the accident.  Plaintiff then moved to strike the counterclaim and the answer.  Jurisdiction arises under 28 U.S.C. § 1332.[1]  As explained below, plaintiff's motion to strike the counterclaim is granted, and the motion to strike the answer is denied.  Plaintiff's motion for summary judgment is granted with respect to claims based directly on H.G.'s injury in the watercraft accident but denied with respect to claims against the Haydens for failure to aid H.G. after she was injured.

---

[1]The Complaint alleged only that all defendants were residents of Indiana, without specifying their citizenships.  The court ordered defendants to state within fourteen days whether any defendant was a citizen of Wisconsin (plaintiff's only state of citizenship) at the time this lawsuit was filed.  Dkt. No. 72.  The Grahams filed a statement clarifying that they have been citizens of Indiana since the lawsuit was filed.  Dkt. No. 73.  The Haydens have not filed a statement.  Because no defendant has taken up the court's offer to assert Wisconsin citizenship, the court assumes that all defendants are citizens of Indiana, where they resided at the relevant time.

*Summary Judgment Standard*

Summary judgment should be granted where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is not a "paper trial."  *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  Only genuine disputes over material facts can prevent a grant of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  *Id.*  Insurance contract interpretation often presents an issue of law suitable for summary judgment.  *Morris v. Economy Fire & Casualty Co.*, 848 N.E.2d 663, 665-66 (Ind. 2006).

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party.  See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255; *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999).  However, a party must present more than mere speculation or conjecture to defeat a summary judgment motion.  The issue is whether a reasonable jury might rule in favor of the non-

moving party based on the evidence in the record.  *Anderson*, 477 U.S. at 252; *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001).

*Undisputed Facts*

I.      *The Accident and Underlying Lawsuit*

Stephen Hayden purchased a homeowner's insurance policy from American Family for his property in Unionville, Indiana, located on Lake Lemon.  The policy became effective on May 12, 2006.  Pl. Ex. 2.  Unfortunately, Stephen passed away on April 25, 2006.  Pl. Ex. 11.  Stephen's will left his estate, including the property, to his three brothers, James, Gerard, and Joseph, as well as his best friend, James Yanan.  *Id.*  The will named James Hayden as personal representative and trustee.  *Id.*

Following Stephen's death, the Hayden brothers and Yanan shared use of the lake property.  Pl. Ex. 10 at 4.  On August 10, 2006, James and his wife Jamie hosted a birthday party for their daughter at the lake house.  *Id.* at 1, 5.  During the day, James was driving a jet ski to pull children on an inner tube.  Pl. Ex. 4; Pl. Ex. 10 at 8-9.  While James was pulling one of those children, thirteen year old H.G., the tube crashed into a dock and H.G. sustained a serious injury.  Pl. Ex. 4; Pl. Ex. 10 at 8-9.

H.G. and her parents filed a lawsuit against James in Marion Superior Court for negligence in towing H.G.  H.G. later filed an amended complaint in state court to add a claim for negligence against both James and Jamie for failure to obtain aid for H.G. after the accident.  Dkt. No. 58, Def. Ex. 1.  American Family filed this action seeking a declaration that Stephen's policy does not cover James or Jamie for H.G.'s claims.  Other facts are set forth as needed below.


II.    *Stephen Hayden's Homeowner's Insurance Policy*

This dispute focuses on the meaning of Stephen Hayden's homeowner's insurance policy.  American Family contends that the policy covers neither James nor Jamie Hayden.  The court includes some of the relevant policy provisions below.  The parties dispute who was "insured" under the policy once Stephen died. The "DEFINITIONS" section provides:

> 5.    Insured
>        a. Insured means you and, if residents of your household:
>        (1) your relatives; and
>        (2) any other person under the age of 21 in your care or in the care of your resident relatives.
> . . .
>        c. If you die, the person having proper temporary custody of covered property replaces you as the named insured.  This applies only to insurance on covered property and legal liability arising out of that property.  If you die, any person who is an insured continues to be an insured while residing on the insured premises.
> . . .
> 14.   You and your refer to the person or people shown as the named insured in the Declarations.  These words also refer to your spouse who is a resident of your household.

Pl. Ex. 2 at 1.

The policy provides personal liability coverage:  "We will pay, up to our limit, compensatory damages for which any insured is legally liable because of bodily injury or property damage caused by an occurrence covered by this policy."  *Id.* at 9.  However, the policy contains an exclusion for certain watercraft:

> Exclusions - Section II
> Coverage D - Personal Liability and Coverage E - Medical Expense do not apply to:
>
> . . .
>
> 19.    Watercraft.
>        a.    We will not cover bodily injury or property damage arising out of the ownership, supervision, entrustment, maintenance, operation, use, loading or unloading of a watercraft:
>              (1) with inboard or inboard-outdrive motor power owned by any insured;
>
> . . .
>
> This exclusion does not apply while such crafts are stored on the insured premises nor to bodily injury to any domestic employee arising out of and in the course of employment by any insured.

*Id.* at 10, 12.

American Family began defending James Hayden under a reservation of rights when the state court action was filed.  Dkt. No. 58, James Hayden Aff. ¶ 4. When the Grahams filed the amended complaint adding Jamie Hayden, American

Family began representing both Haydens but did not file an additional reservation of rights.  *Id.* ¶¶ 7-9.

*Discussion*

American Family offers two reasons that it should not have to indemnify James and Jamie for H.G.'s claims.  First, it argues that neither James nor Jamie was an insured under the policy.  Second, it argues that even if James and/or Jamie was an insured, the watercraft exclusion applies to the claims.  Defendants disagree, and the Haydens also argue that American Family has waived its ability to dispute its duty to indemnify the Haydens.

I.      *Waiver*

The amended complaint in state court added Jamie as a party and added a claim against James and Jamie for failure to obtain aid for H.G. after the accident.  The Haydens argue that American Family's failure to cite the amended complaint and its failure to reserve rights concerning the claim against James and Jamie for failure to obtain aid constitutes a waiver of American Family's defenses to coverage of this new claim.  They cite *Employers Insurance of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015 (Ind. App. 1999), for the proposition that "an insurer may be estopped from raising the defense of noncoverage when it assumes the defense of an action on behalf of its insured without a reservation of rights but with knowledge of facts which would have permitted it to deny coverage."  *Id.* at

1028.   Under Indiana law, however, it is well established that the filing of a declaratory judgment action disclaiming all coverage is sufficient to preclude waiver.   In *Recitel*, the insurer had filed a declaratory judgment action, and the court cited this as a reason that estoppel did not apply.   *Id.* at 1029.

American Family has not waived its defenses to coverage of the failure to aid claim.   Its complaint in this action names both James and Jamie as defendants and seeks a declaration that the insurance policy "does not provide indemnification for James and/or Jamie Hayden for the Underlying Lawsuit which is the subject of the complaint by H.G. by her parents and next friends, Thomas Graham and Kristy Graham, and Thomas Graham and Kristy Graham, individually as to the allegations made against James and/or Jamie Hayden in the Underlying Lawsuit."   Compl. ¶ 41.   The complaint contains several other assertions that American Family owes no coverage to both James and Jamie. American Family was not concealing its belief that it did not owe any duty to defend or indemnify the Haydens for any of H.G.'s claims, so it has not waived its right to seek a declaratory judgment.

II.     *James and Jamie Hayden as Insureds under the Policy*

American Family argues that it does not need to indemnify James or Jamie Hayden against H.G.'s claims because neither of them qualifies as an insured

under the policy.  The court disagrees and finds that each qualified as an insured under the policy.

Indiana courts interpreting insurance policies use the same rules of construction that apply to other contracts.  *Kelly v. Hamilton*, 816 N.E.2d 1188, 1193 (Ind. App. 2004).  The court must give clear and unambiguous terms their plain and ordinary meanings.  *Id.*  In a dispute between an insured and an insurer, any ambiguity is strictly construed against the insurer.  *Bedwell v. Sagamore Ins. Co.*, 753 N.E.2d 775, 779 (Ind. App. 2001).  When an ambiguity arises in a dispute between a third party and an insurer, the court determines the meaning of the policy from a neutral stance.  *Id.*

     A.    *James Hayden*

James Hayden was an insured.  Because of Stephen's death, James' status is determined by Definition 5c, which reads:

> If you die, the person having proper temporary custody of covered property replaces you as the named insured.  This applies only to insurance on covered property and legal liability arising out of that property.  If you die, any person who is an insured continues to be an insured while residing on the insured premises.

The first "you" refers to Stephen Hayden.  The dispute between the parties centers on whether James had "proper temporary custody" of Stephen's property at the time of the accident.

James had broad power over Stephen's property upon his death.  Stephen's will appoints James as the "Personal Representative and Trustee" of the estate, who "shall have all powers enumerated and granted to a personal representative under the Indiana Code . . . to be exercised without the necessity of court supervision or approval . . . ."  Pl. Ex. 11.  Indiana law gives substantial powers to personal representatives, including the authority to "Hold, manage, safeguard, and control the estate's real and personal property, insure the assets of the estate against damage, loss, and liability, and insure the personal representative personally against liability as to third persons."  Ind. Code § 29-1-7.5-3(15).

Despite James' authority, American Family claims that he did not have "proper temporary custody" of Stephen's property on the date of the accident, August 10, 2006, because he had already developed calendars for the other devisees' use of the property.  While devisees can often dispense with formalities, there is no indication that James and the other devisees did anything to eliminate James' custody of the property.  In the same transcript that American Family cites to argue that James did not have custody of the property, James responds affirmatively to the question:  "who is it that has the authority to say who can use the property, is that you?"  Pl. Ex. 10 at 4.  No one was in a better position than James to exercise custody, *i.e.*, the authority to "guard," "preserve," and "control" the property.  See Webster's Third New Int'l Dictionary 559 (1993) (defining custody).  Even though the will had not yet been probated on the date of the accident, James was already exercising his custodial authority, and the authority

was temporary until the estate was closed.  See Ind. Code § 29-1-7-23 (upon death, property is "subject to the possession of the personal representative").[2]  At the time of the accident, James had "proper temporary custody" of Stephen's property.  This custody included the real property and the personal watercraft.  Under Definition 5C, therefore, James was a named insured who had replaced Stephen Hayden for purposes of "covered property and legal liability arising out of that property."

B.   *Jamie Hayden*

Jamie's status as an insured presents a closer issue.  Each side offers a reasonable reading of the policy as it applies to her.  The court finds that the better reading is that she was insured while she was on Stephen's property.

The policy provides that if Stephen Hayden dies, "the person having proper temporary custody of covered property replaces you as the named insured."  Thus, when Stephen Hayden died, James Hayden "replaced" him as "named insured."  The policy provides that relatives of the named insured who are residents of the named insured's household are also insured.  Definition 5a reads:

> Insured means you and, if residents of your household:
> (1) your relatives; and

_____

[2]James filed a petition to probate the will on June 1, 2006, and the will was probated on August 21, 2006, less than two weeks after the accident.  Pl. Ex. 11.  The August 21 court order named James as personal representative.  *Id.*  The estate was closed on March 28, 2007.  *Id.*

(2) any other person under the age of 21 in your care or in the care of your resident relatives.

Jamie Hayden was a resident of James' Indianapolis household and his wife, so she was an insured.

American Family characterizes this as an attempt "to re-write the policy as if it were a policy issued to James Hayden, and not Stephen Hayden."  Pl. Reply Br. 11.  It points out that "you" and "your" in Definition 5a do not refer to merely the "named insured."  Definition 14 defines the terms more specifically:  "You and your refer to the person or people shown as the named insured in the Declarations.  These words also refer to your spouse who is a resident of your household."  The key phrase for American Family is "in the Declarations."  The Declarations page listed only Stephen.  Because Jamie was not a resident of Stephen's household, American Family concludes that she was not an insured.

The weakness of American Family's argument is that it makes the words "replaces" and "named" surplusage.  If "you" and "your" continued to refer only to Stephen Hayden, then Definition 5c's provision that James "replaces" Stephen as named insured after Stephen's death would be meaningless.  American Family's interpretation also reads the word "named" out of the policy as it applies to James.  Upon Stephen's death, James became a "named insured" for covered property.  If "you" and "your" continued to refer only to the person listed on the Declarations page, then it would make no sense to call James a "named" insured.  It would also

make little sense to exclude the named insured's wife while both she and the named insured were on the covered property. The policy intends to cover the named insured's resident relatives.

The fairest reading of the policy is that Jamie was an insured with respect to claims arising from use of Stephen's property. Definition 5c provides that the temporary custodian of a deceased named insured's property replaces the named insured for "covered property and legal liability arising out of that property." Definition 14 provides: "You and your refer to the person or people shown as the named insured in the Declarations." Though the Declarations page lists only Stephen, James "replaced" him as the named insured, so "you" and "your" referred to James. Definition 5a provides "your" resident relatives with coverage. Definition 5a does not require that the insured live on the insured premises. It requires only that the relative and the named insured live in the same household. If Stephen were still alive and resided in Indianapolis with a spouse, both would have had liability coverage if they had been at the birthday party. It would be incorrect to exclude Jamie from coverage while she was on the covered property with her husband who was exercising his "proper temporary custody" of the property. James replaced Stephen as named insured for "covered property and legal liability arising out of that property," so James' resident wife was an insured. Covered property included Stephen's real and personal property, and Jamie's alleged liability was caused by an occurrence (her alleged failure to obtain aid) on the covered property.

-13-

III.    *The Watercraft Exclusion*

The policy provides liability coverage, but it contains an exclusion for liability arising out of the use of certain motorized watercraft.  American Family contends that this exclusion terminates its requirement to indemnify James and Jamie.  The exclusion reads:

> Coverage D – Personal Liability and Coverage E – Medical Expense do not apply to:
>
>                  *    *    *
>
> 19.    Watercraft.
>       a. We will not cover bodily injury or property damage arising out of the ownership, supervision, entrustment, maintenance, operation, use, loading or unloading of a watercraft:
>             (1) with inboard or inboard-outdrive motor power owned by any insured;
>
>                  *    *    *
>
> This exclusion does not apply while such crafts are stored on the insured premises nor to bodily injury to any domestic employee arising out of and in the course of employment by any insured.

A.     *The Negligent Driving Claim*

H.G.'s claim that James Hayden negligently drove the motorized personal watercraft concerns bodily injury that arose out of the use of the watercraft.  The dispute between the parties is whether the watercraft is covered by the exclusion.  The court finds that it is.

The relevant subpart in the watercraft exclusion is 19a(1).  The watercraft has an inboard motor.   See 9 Couch on Insurance § 127:37 ("'Watercraft' exclusions will generally apply to personal watercraft, like jet skis . . . ."); Pl. Ex. 8 (explaining the horsepower produced by the Haydens' watercraft's motor).  The first disputed question is whether the watercraft was "owned by any insured."  If it was, the issue then becomes whether the last quoted sentence, the "give back" provision for storage, applies to preclude the exclusion's applicability to the watercraft.

The defendants contend that no insured owned the watercraft on the date of the accident because it was still titled to Stephen Hayden, who, they argue, ceased to be an insured when he died.  "Owned" is not defined in the policy, but a plain language reading suggests that it means "to have or hold as property or appurtenance:  have a rightful title to . . . ."  Webster's Third New Int'l Dictionary 1612 (1993).  The watercraft was titled in Stephen's name until May 2007, after the accident, when James took title to it.  Dkt. No. 64, Def. Ex. A.  Under Indiana

law, however, personal representatives gain *possession* of the decedent's personal property upon the decedent's death, but the *title* transfers to devisees upon death. Ind. Code § 29-1-7-23; *Indiana Dep't of State Revenue v. Estate of Riggs*, 735 N.E.2d 340, 343-44 (Ind. Tax 2000).

Either James or Stephen owned the watercraft for purposes of the exclusion, and they were both insured.  James did not own the watercraft in his capacity as personal representative, but he was an owner of it in his capacity as a devisee.  Stephen's will provided:  "I give and bequeath all my personal and household effects of every kind including but not limited to . . . boats . . . to GERARD HAYDEN, JR., JOSEPH HAYDEN, JAMES HAYDEN, AND JAMES YANAN."  Pl. Ex. 11.  Even if James did not own the watercraft as a devisee, then the deceased Stephen would have still owned it for purposes of the exclusion.

Both Stephen and James were "insureds" under the policy.  James became an insured when Stephen died.  A reasonable reading of the policy recognizes that Stephen did not cease to be an insured for purposes of determining ownership of the watercraft.  The exclusion was written to cover property that Stephen owned, including the watercraft.  What's more, the court is troubled by the defendants' suggestion that Stephen was no longer an insured.  Even if Stephen was no longer the official "named insured," he was certainly still insured.  If the policy had provided coverage for use of property only if it was "owned by any insured," surely it would be only fair to treat the deceased Stephen as still insured.

Finally, the "give back" clause in the exclusion does not apply to the H.G. accident.  The clause provides that the exclusion does not apply to a watercraft "while" it is "stored on the insured premises . . . ."  Defendants interpret this clause broadly to apply to any watercraft that is "stored and used at the insured premises."  Dkt. No. 63, Def. Br. at 8.  The court disagrees.  The clause does not give back coverage to any craft that is "stored and used" on the insured premises; it gives back coverage while the craft is "stored" on the insured premises.  It would apply when the craft was kept on its lift out of the water.  See Pl. Ex. 10 at 6.  The clause is consistent with a general trend to limit the applicability of watercraft exclusions in situations where the craft is immobile.   9 Couch on Insurance § 127:37.  The clause does not apply to give back coverage for liability arising out of the craft's use on a lake.  American Family has indicated that Stephen Hayden had the option to purchase additional liability coverage for watercraft, but he did not do so.  Dkt. No. 49, Bick Aff. ¶ 11.  Though James Hayden was an insured, the policy excludes claims for damages arising out of the use of the craft.  H.G.'s claim in the Amended Complaint that James negligently drove the craft is a claim for damages arising out of the use of the craft, so the exclusion applies to bar coverage.

B.    *The Failure to Aid Claim*

The exclusion does not apply to H.G.'s claim that she suffered bodily injury because "[a]fter [the] accident and in spite of significant injures suffered by [H.G.],

James and Jamie failed and refused to obtain medical attention for [H.G.]"  Dkt. No. 58, Def. Ex. 1.  The watercraft exclusion applies only if the claim is based on bodily injury "arising out of the ownership, supervision, entrustment, maintenance, operation, use, loading or unloading of" the craft.

The policy does not define "arising," but Indiana courts have defined the term in other insurance policies.  When an insurance policy provides that an accident is covered or excluded if it arises out of the use of certain property, the question is whether the use of the property is the "efficient and predominating cause" of the accident.  *E.g.*, *Indiana Lumbermens Mutual Ins. Co. v. Statesman Ins. Co.*, 291 N.E.2d 897, 899 (Ind. 1973); *Shelter Mutual Ins. Co. v. Barron*, 615 N.E.2d 503, 506 (Ind. App. 1993).

The watercraft was not necessarily the efficient and predominating cause of any injuries that H.G. suffered as a result of the Haydens' alleged failure to obtain medical attention.  The alleged breach of a duty to obtain aid caused these additional injuries.  This duty to help H.G., whom the Haydens invited and transported to the property, was independent of James' duty to drive the craft safely, and it did not arise until after H.G. suffered the original injuries.  In other circumstances, such as a Rule 13(a) compulsory counterclaim, the failure to obtain aid claim would probably be deemed to have "arisen" from the use of the craft, but the insurance policy requires a more strict causation for the exclusion

to apply.[3]  Because James and Jamie were insured and because the exclusion does not apply to the failure to obtain aid claim, the motion for summary judgement is denied as to that claim in the Graham's amended complaint.

*Conclusion*

For the foregoing reasons, the court grants the plaintiff's motion for summary judgment as to coverage as it applies to the negligent driving claim and denies it as it applies to the failure to obtain aid claim (Dkt. No. 47).  Trial on the remaining claim remains scheduled for December 8, 2008.[4]

---

[3]American Family analogizes this case to *Illinois Farmers Insurance Co. v. Wiegand*, which held that a policy exclusion covering claims resulting from the entrustment or use of a motor vehicle precluded a claim for negligent supervision of an ATV driver.  808 N.E.2d 180, 188, 191 (Ind. App. 2004).  This case is different.  Here the harm caused by the watercraft accident can be distinguished from the harm caused by the failure to obtain medical aid.  In the negligent supervision case, the claim of negligent supervision was "inextricably intertwined" with the use of the vehicle.  *Id.* at 191, quoting *Taylor v. American Fire & Casualty* Co., 925 P.2d 1279, 1282-83 (Utah App. 1996).

[4]The Haydens filed a four part counterclaim and an answer on May 20, 2008.  Dkt. Nos. 52, 53.  Plaintiff has moved to strike the counterclaim and the answer.  Dkt. No. 54.  Plaintiff's motion to strike the Haydens' answer (Dkt. No. 52) is denied.  American Family has not been prejudiced by the Haydens' late answer.  On the other hand, the Haydens would be severely prejudiced because the court would have to enter a default against the Haydens if it struck their answer.

Plaintiff's motion to strike the counterclaim (Dkt. No. 53) is granted.  Because the Haydens knew of the factual basis of their counterclaim at the time the complaint was filed, they must have included the counterclaim with the answer.  Fed. R. Civ. P. 13.  Though the court accepts the answer, it was untimely.  Therefore, the counterclaim is also untimely.  It would prejudice American Family to accept this late counterclaim.

So ordered.

Date: November 3, 2008

_David F. Hamilton_
_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Robert O'Dell
O'DELL & ASSOCIATES, P.C.
rodell@odell-lawfirm.com

Robert Zink
GOODIN ABERNATHY, LLP
rzink@gamlawyers.com

John Papageorge
TAFT, STETTINIUS & HOLLISTER, LLP
jpapageorge@taftlaw.com

Terry Curry
tcurry@vbradr.com